IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**HUNTER JESSUP,**

                Plaintiff,

v.                              Civil Action No. 1:21-CV-125
                                  Judge Bailey

**JEFF S. SANDY**, personally and in his official
capacity as Secretary of West Virginia
Department of Military Affairs and Public Safety;
**BETSY JIVIDEN**, personally and in her official
capacity as Department of Corrections Commission;
**JOHN SHEELEY**, personally and in his official
capacity as Eastern Regional Jail Warden/Superintendent;
**DONTREWELL E. KELLY**, correctional officer,
personally and in his official capacity;
**STEVEN ZITMEYER**, correctional officer,
personally and in his official capacity;
**ABRAHAM ARTHUR BEAN**, correctional officer,
personally and in his official capacity;
**JOHN MICHAEL ANDERSON**, correctional officer,
personally and in his official capacity;
**[FIRST NAME UNKNOWN] COSTELLO**, correctional officer,
personally and in his official capacity;

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are Defendant Abraham Bean's Motion to Dismiss [Doc. 2], Defendant John Anderson's Motion to Dismiss [Doc. 3], Defendants Dontrewell Kelley and Steven Zentmyer's Motion to Dismiss [Doc. 4], and Administrator Defendants' Motion to Dismiss the Complaint of Plaintiff Jessup [Doc. 5]. All motions have been fully briefed and are ripe for decision.

**Procedural Background**

On October 31, 2019, four inmates at the Eastern Regional Jail ("ERJ") filed suit against the West Virginia Division of Corrections and Rehabilitation and nineteen unnamed correctional officers [3:19-CV-185, Doc. 1]. On December 10, 2019, an amended complaint was filed, adding Hunter Jessup and another inmate as plaintiffs and adding Jeff S. Sandy, Betsy Jividen and John Sheeley ("The Administrator Defendants") as defendants [3:19-CV-185, Doc. 6]. By Order entered April 14, 2020, the Court dismissed the West Virginia Division of Corrections and Rehabilitation with prejudice, because the Division is not a person subject to suit under 42 U.S.C. § 1983. Additionally, the Court dismissed the amended complaint as having been filed without leave [3:19-CV-185, Doc. 15].

On April 16, 2020, the Court further ordered the Clerk to sever the six plaintiffs' claims into separate complaints. The Order provided that the Clerk was directed to open a new case for Mr. Jessup. [3:19-CV-185, Doc. 28]. The new case was opened and assigned docket number 3:20-CV-168. Subsequently, on October 9, 2020, plaintiff amended his complaint and additionally moved for leave to proceed in forma pauperis [3:20-CV-168, Doc. 8]. On December 3, 2020, Magistrate Judge Trumble filed his Report and Recommendation ("R&R") recommending that Counts 2, 3, 4, and 6 of the Amended Complaint [3:20-CV-168, Doc. 8] be dismissed without prejudice against all defendants, that defendants Dontrewell E. Kelly, Steven Zitmeyer, and [First Name Unknown] Costello be dismissed without prejudice from Counts 1 and 5 of the Amended Complaint [3:20-CV-168, Doc. 12].

On January 12, 2021, the Court dismissed the case on the basis that plaintiff had failed to comply with the November 1, 2020 deadline [3:20-CV-168, Doc. 14]. Plaintiff filed

2

a Motion for Relief filed under Rule 60 on April 28, 2021 [3:20-CV-168, Doc. 15], which was denied on the basis as not being filed within a reasonable time. [3:20-CV-168, Doc. 16].

The next day, the plaintiff filed a complaint in the Circuit Court of Berkeley County, West Virginia, that was virtually identical to the Amended Complaint filed in federal court, except for paragraph 20, which was added to include defendant John Anderson [1:21-CV-125, Doc. 1-2].[1] The plaintiff's Complaint was served through the West Virginia Secretary of State at various dates in September 2021, and this matter was removed to this Court on September 15, 2021. [Doc. 1].[2]

On September 22, 2021, the pending motions to dismiss were filed.

## Legal Standard

To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007) (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." **Twombly**, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. **Id**. In other words, the complaint must

---

[1] Inasmuch as Magistrate Judge Trumble filed a R&R concerning the same allegations in the prior case, this Court may liberally plagiarize from that document.

[2] Unless otherwise specified, docket references from this point on will refer to filings in 1:21-CV-125.

3

contain allegations that are "plausible" on their face, rather than merely "conceivable." *Id.* at 555, 570; **Giarratano v. Johnson**, 521 F.3d 298 (4th Cir. 2008). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." **Bass v. E.I. DuPont de Nemours & Co.**, 324 F.3d 761, 765 (4th Cir. 2003) (citing **Dickson v. Microsoft Corp.**, 309 F.3d 193, 213 (4th Cir. 2002)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 679 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*; see also **Francis v. Giacomelli**, 588 F.3d 186, 193 (4th Cir. 2009).

## Alleged Facts

Plaintiff asserts the following facts in his amended complaint:

Plaintiff claims that on or about June 26, 2018, plaintiff was instructed by a correctional officer ("CO") to report to the medical unit to receive medication. While walking to the medical unit, plaintiff was stopped by CO Anderson and ordered to return to where he came from. Plaintiff asserts that when plaintiff explained why he was walking to the medical unit, CO Anderson body slammed plaintiff and radioed for back-up. Fellow COs Bean, Kelly, Zitmeyer, and Costello arrived to assist CO Anderson. Plaintiff claims that after he was handcuffed by the COs, Bean punched plaintiff in the face and another CO sprayed plaintiff with mace. According to plaintiff, he was then taken to a holding cell

without being given the chance to shower or clean the mace off of his body. Additionally, plaintiff asserts that he was never formally disciplined for his role in the altercation.

Plaintiff brings a six-count complaint against defendants. First, plaintiff claims that COs Kelly, Zitmeyer, Bean, and Costello violated his Eighth Amendment rights against cruel and unusual punishment. Plaintiff argues that the COs used excessive force when striking plaintiff after he was already restrained with handcuffs. In Count Two, plaintiff alleges that his Eight Amendment rights were violated by Sandy, Jividen, and Sheeley because these defendants established a policy or custom that permitted COs to act in a cruel manner without deterrence. Further, these defendants made it difficult for plaintiff to file grievances, seek medical care, and for third parties to oversee misconduct by COs. In Count Three, plaintiff claims his due process rights were violated by defendants because defendants obstructed plaintiff from documenting injuries and seeking redress for the violations against him. Further, Count Four alleges that Sandy, Jividen, and Sheeley failed to adequately train and oversee defendant COs and failed to act on repeated violations by COs. Fifth, plaintiff asserts defendant COs Kelly, Zitmeyer, Bean, and Costello committed assault and battery through offensive touching without a legitimate purpose. Finally, Count Six alleges that defendants intentionally inflicted emotional distress on plaintiff when defendants intentionally tortured plaintiff or established a policy promoting torture as a means to retaliate against inmates.

Plaintiff seeks compensatory damages against all relevant defendants in the amount of $250,000.00 for physical injuries, pain and suffering, and emotional distress. Additionally, plaintiff seeks punitive damages against defendants in the amount of

$5,000,000.00. Further, plaintiff requests pre- and post-judgment interest on all liquidated sums against defendants.

## Discussion

Plaintiff brought claims pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law . . . [or] suit in equity.

42 U.S.C. § 1983.

The initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* **Hale v. Tallapoosa County**, 50 F.3d 1579 (11th Cir. 1995); **Harvey v. Harvey**, 949 F. 2d 1127, 1130 (11th Cir. 1992).

The Supreme Court has long recognized that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." **Will v. Michigan Dept. of State Police**, 491 U.S. 58, 71 (1989). "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" **Conner v. Donnelly**, 42 F.3d 220, 223 (4th Cir. 1994) (quoting **West v. Atkins**, 487 U.S. 42, 50 (1988)); *see also* **Lugar v. Edmonson Oil Co., Inc.**, 457

U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Thus, no state law has to be in place that is the source of the constitutional violation. Rather, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. **West v. Atkins**, 487 U.S. at 49 (citing **United States v. Classic**, 313 U.S. 299, 326 (1941)); see also **Monroe v. Pape**, 365 U.S. 167, 187 (1961)).

This Court notes that the plaintiff has sued each defendant in his or her individual **and** official capacity, which are treated as suits against the governmental agency. **Kentucky v. Graham**, 473 U.S. 159 (1985); **Will v. Michigan Dep't of State Police**, 491 U.S. 274, 280 (1985) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' and '[a]s such, it is no different from a suit against the State itself.'"); see also **Noe v. West Virginia**, 2010 WL 3025561 (N.D. W.Va. July 29, 2010) (Bailey, J.).

An action for damages against a state, or a state employee in his or her official capacity is barred by the Eleventh Amendment. **Winston v. West Virginia Dept. of Health and Human Resources**, 2021 WL 4150709 (S.D. W.Va. Sept. 13, 2021) (Johnston, J.); **Westinghouse Elec. v. West Virginia Dept. of Highways**, 845 F.2d 468 (4th Cir. 1988); **Noe v. West Virginia**, supra.

With regard to Count One, plaintiff alleges that CO Anderson body slammed the plaintiff to the ground and radioed for assistance and that after he was handcuffed and

secured, CO Bean punched him in the face. Because there are sufficient facts alleged to infer a plausible claim for relief against Anderson for body slamming plaintiff and for Bean striking plaintiff, this Court finds that it would be inappropriate to dismiss defendants Anderson and Bean at this time.

However, plaintiff fails to state a claim upon which relief may be granted as to the remaining CO defendants. The only facts in the amended complaint regarding Kelly, Zitmeyer, and Costello are that they responded to CO Anderson's call for assistance. No facts are presented in the complaint that support an Eighth Amendment violation based on this conduct. While plaintiff states that another CO sprayed him with mace after he was punched in the face by Bean, plaintiff fails to identify the CO. Additionally, Plaintiff does not identify who escorted plaintiff to the holding cell without allowing him to clean up. Any potential defendants are left without the required short and plain statement of the claim showing that plaintiff is entitled to relief based on the limited information in the amended complaint. *See* **Twombly**, 550 U.S. at 555. Therefore, plaintiff fails to state a claim in Count One against defendants Kelly, Zitmeyer, and Costello, but does sufficiently state a claim against defendants Anderson and Bean.

Plaintiff brings Count Two against defendants Sandy, Jividen, and Sheeley for establishing a policy or custom of allowing COs to engage in cruel conduct against inmates without deterrence.

"Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." ***Ashcroft v. Iqbal***, 556 U.S. 662, 676 (2009). As stated by the

Fourth Circuit, because there is no *respondeat superior* liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." **Vinnedge v. Gibbs**, 550 F. 2d 926, 928 (4th Cir. 1997) (citing **Bennett v. Gravelle**, 323 F.Supp. 203, 214 (D. Md. 1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971)); **Harris v. City of Virginia Beach**, 11 F.App'x 212, 215 (4th Cir. 2001).

Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. **Fisher v. Washington Metro. Area Transit Auth.**, 690 F.2d 1133 (4th Cir. 1982), *abrogated on other grounds by* **County of Riverside v. McLaughlin**, 500 U.S. 44 (1991).

"We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." **Shaw v. Stroud**, 13 F.3d 791, 799 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994) (citations omitted).

"To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the

conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." **Shaw**, 13 F.3d at 799 (citing **Slakan v. Porter**, 737 F.2d 368, 373 (4th Cir. 1984)). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses,' however, a plaintiff claiming deliberate indifference 'assumes a heavy burden of proof.'" **Shaw**, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." **Id**.

Plaintiff provides no facts to support this claim or allow the undersigned to infer the existence of such a custom that would result in supervisory liability. Plaintiff merely makes conclusory statements that these defendants prevented plaintiff from reporting grievances, made it difficult for others to witness misconduct, and avoided the creation of medical records. This Court needs facts to determine the merits of plaintiff's claim, not just plaintiff's contentions. Therefore, plaintiff fails to state a claim upon which relief can be granted as to all defendants in Count Two.

Plaintiff brings Count Three against all defendants for preventing plaintiff from seeking redress because he was unable to document his injuries, obtain legal documents, and timely access attorneys. The only fact in the amended complaint that clearly relates to this claim is that plaintiff was taken to a holding cell without receiving medical attention. However, plaintiff does not identify who escorted him to the holding cell or provide any additional information about the event. Additionally, there are no facts to indicate that this is a policy or custom supported by administrative officials within the ERJ. Importantly, nowhere in the complaint does plaintiff provide information regarding either legal

documents or access to attorneys being withheld. The first and only time this assertion is made is in the "Claim" section of the complaint under Count Three. Again, defendants are without the short and plain statement of the claim that demonstrates the basis for the complaint. See *Twombly*, 550 U.S. at 555. Therefore, plaintiff fails to state a claim upon which relief could be granted as to all defendants in Count Three.

Furthermore, the Fifth Amendment is inapplicable to this case because the Fifth Amendment applies only to actions of the Federal government, not the actions of states. ***Sarkissian v. W. Va. Univ. Bd. of Governors***, 2007 WL 1308978, n. 2 (N.D. W.Va. May 3, 2007) (Stamp, J.).

Plaintiff brings Count Four against Defendants Sandy, Jividen, and Sheeley for egaging in negligent oversight, allowing pervasive Eighth Amendment violations, and failing to adequately train and oversee officers. The limited facts in the complaint for this case do not support a claim and this Court only considers the facts alleged in the complaint. There are no facts that demonstrate these defendants were negligent in their oversight and training of personnel at the ERJ. It would appear from the paragraph added to the complaint in this case that the plaintiff relies on his allegation that "in the months and years immediately preceding and following the events giving rise to the instant complaint . . . there had been multiple other incidents at Eastern Regional Jail where, as here, prisoners were victimized by the excessive force of correctional officers, the officers involved were not punished, and efforts were taken by ERJ administrators to cover up evidence of correctional officer misconduct and/or deny prisoners the ability to document their injuries or meaningfully seek redress, including with respect to Michael Garrett, Mark Blue, Roger Reid, Adebowole Ojo, and David Richardson. Of the alleged misconduct regarding these

five prisoners, three occurred well after the alleged misconduct with regard to this plaintiff. [See Doc. 6 in 3:19-CV-185]. One alleged incident occurred six months before and involved different COs. Finally, the one prior incident involving CO Bean allegedly occurred on June 7, 2018, only 19 days prior to the plaintiff's claimed incident.

This Court finds that this information is insufficient to nudge the allegations from speculative to pausible. Therefore, plaintiff fails to state a claim upon which relief could be granted as to Defendants Sandy, Jividen, and Sheeley in Count Four.

Plaintiff brings Count Five against COs Kelly, Zitmeyer, Anderson, Bean, and Costello for offensively touching plaintiff without a legitimate purpose. In his complaint, plaintiff states that CO Anderson body slammed him and that after he was handcuffed and secured, CO Bean punched him in the face. Because these are sufficient facts to infer a plausible claim for relief against Anderson and Bean, the undersigned finds that it would be inappropriate to dismiss them at this time.

However, plaintiff fails to state a claim upon which relief may be granted as to the remaining CO Defendants. The only facts in the amended complaint regarding Kelly, Zitmeyer, and Costello are that they responded to CO Anderson's call for assistance. No facts are presented in the amended complaint that demonstrate the remaining COs assaulted, touched, or offensively touched plaintiff. There is no mention of Kelly, Zitmeyer, and Costello's conduct once they responded to CO Anderson's call for backup. While plaintiff states that another CO sprayed him with mace after he was punched in the face by Bean, the plaintiff fails to identify the CO or give additional facts. Therefore, plaintiff fails to state a claim in Count Five against Defendants Kelly, Zitmeyer, and Costello, but

does sufficiently state a claim against defendants Anderson and Bean to permit that claim to proceed.

Finally, plaintiff brings Count Six against all defendants for allegedly intentionally torturing plaintiff and establishing a policy that promoted such torture. Again, the Court is left with conclusory statements without facts, which is insufficient to support a well-pleaded complaint. See **Twombly**, 550 U.S. at 555. There are no facts in the complaint that plausibly demonstrate that there is a policy permitting "intentional torture" within the ERJ. Additionally, the complaint does not reflect that defendants sought to inflict emotional distress as the complaint states. Further, plaintiff states that the conduct here caused him emotional distress without providing any information of the harm. The undersigned is left to question how plaintiff has been damaged without any facts to support the assertion.

West Virginia does recognize a cause of action for intentional infliction of emotional distress. Syl. Pt. 6, **Harless v. First Nat. Bank in Fairmont**, 169 W.Va. 673, 289 S.E.2d 692 (1982). The West Virginia Supreme Court of Appeals has set forth a four part test:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the

13

plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, **Travis v. Alcon Lab'ys, Inc.**, 202 W.Va. 369, 504 S.E.2d 419 (1998).

While plaintiff states in a conclusory fashion that he suffered extreme emotional distress that no reasonable person could endure, he plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on his life. A plaintiff must allege factual allegations sufficient to show that the plaintiff's emotional distress was severe, and no reasonable person could expect to endure it. See **Travis v. JP Morgan Chase Bank, N.A.**, 2012 WL 3193341, at *5 (N.D. W.Va. Aug. 6, 2012) (Bailey, J.). In **Travis**, this Court held that the plaintiffs failed to adequately plead the emotional distress elements of the tort of outrage because the factual allegations were merely a formulaic recitation of the elements. See *id*. In order to satisfy the emotional distress and damage elements in a tort of outrage claim, a plaintiff must allege "facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives[.]" **Patrick v. PHH Mortg. Corp.**, 937 F.Supp.2d 773, 791 (N.D. W.Va. 2013) (Groh, J.).

Furthermore, Jessup's claim of intentional infliction of emotional distress is duplicative of his claim for assault and battery because it arises from the same events. **Kelly v. W.Va. Reg'l Jail & Corr. Facility Auth.**, 2019 WL 2865863, *3 (S.D. W.Va. July 2, 2019) (Copenhaver, J.) ("The West Virginia Supreme Court of Appeals 'treats claims for outrage and assault [and] battery arising from the save events [as] duplicative.'"). Since "the 'law does not permit a double satisfaction for a single injury,' the plaintiff 'may not

14

recover damages twice for the same injury simply because he has two legal theories.'" *Id*. (citing Syl. Pt. 7, ***Harless v. First Nat'l Bank***, 169 W.Va. 673, 289 S.E.2d 692 (1982)). Therefore, Jessup's claim for intentional infliction of emotional distress will be dismissed.

Finally, the plaintiff requests that he be given leave to amend his complaint. Federal Rule of Civil Procedure 15(a)(2) states that a party may amend its pleading only with the opposing party's written consent or the court's leave. The Rule also states that "[t]he court should freely give leave when justice so requires." However, in this instant matter, justice would require that leave not be given as the plaintiff has failed over the course of three separate complaints to assert proper causes of action. In fact, even after having the benefit of Magistrate Judge Trumble's Report and Recommendation, the plaintiff added but a single paragraph. The granting or refusing of leave to file a supplemental pleading rests in the sound discretion of the trial court. ***Graham v. Stansberry***, 2008 WL 3910689 (E.D. N.C. Aug. 20, 2008) (Flanagan, C.J.) (citing ***United States v. Sherwood Distilling Co.***, 235 F.Supp. 776, 782 (D. Md. 1964)), aff'd *per curiam*, 344 F.2d 964 (4th Cir.1965)).

The United States Supreme Court has cited repeated failure to cure deficiencies by amendments previously allowed, as well as undue prejudice to the opposing party by virtue of allowance of the amendment, as grounds for denial of leave to amend pleadings under Rule 15(a)(2). ***Foman v. Davis***, 371 U.S. 178, 182 (1962) (cited in ***Medigen, Inc. v. Pub. Serv. Comm'n***, 985 F.2d 164, 168 (4th Cir. 1993)).

In this case, the Plaintiff's continuing failure to meet the pleading requirements of ***Twombly*** and ***Iqbal*** justify this Court's denial of the plaintiff's request for leave to amend his pleadings.

For the reasons stated above:

Counts Two, Three, Four and Six are **DISMISSED**;

Counts One and Five are **DISMISSED** as to all defendants except Anderson and Bean;

This action will proceed against defendants Anderson and Bean under Counts One and Five;

Defendant Abraham Bean's Motion to Dismiss [**Doc. 2**] is **DENIED**;

Defendant John Anderson's Motion to Dismiss [**Doc. 3**] is **DENIED**;

Defendants Dontrewell Kelley and Steven Zentmyer's Motion to Dismiss [**Doc. 4**] is **GRANTED**, and

Administrator Defendants' Motion to Dismiss the Complaint of Plaintiff Jessup [**Doc. 5**] is **GRANTED**.

This Court will issue a First Order and Notice Regarding Discovery and Scheduling Conference forthwith.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED**: December 2, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE